■ GERALD BOYD, Respondent, v NEW YORK CITY HOUSING AUTHORITY, Appellant. [964 NYS2d 10]—

Order, Supreme Court, Bronx County (Mary Ann Brigantti-Hughes, J.), entered on or about June 8, 2012, which denied defendant's motion for summary judgment dismissing the complaint, reversed, on the law, without costs, and the motion granted. The Clerk is directed to enter judgment accordingly.

Plaintiff alleges that he was injured in the grounds outside the building in which he lives, when he could not find a seat on a bench, and decided to lean back against what he thought was a sturdy, three-foot-high black iron fence surrounding an area of greenery. In fact, he had leaned against an unlocked gate, which swung inward, causing him to fall and suffer injuries.

Although property owners have a duty to maintain their property in a reasonably safe condition, and to warn of latent hazards of which they are aware (*see Basso v Miller*, 40 NY2d

233, 245 [1976]), they have no duty to protect or warn, and a court is not precluded from granting summary judgment, where the condition complained of was both open and obvious and, as a matter of law, not inherently dangerous (*see e.g. Lazar v Burger Heaven*, 88 AD3d 591 [1st Dept 2011]; *Baynes v City of New York*, 81 AD3d 423 [1st Dept 2011]; *Cupo v Karfunkel*, 1 AD3d 48, 52 [2d Dept 2003]). "In such circumstances, the condition which caused the accident cannot fairly be attributed to any negligent maintenance of the property" (*Cupo*, 1 AD3d at 52).

Here, defendant NYCHA established prima facie that the unlocked gate that allegedly caused plaintiff to injure himself was open and obvious, and was not inherently dangerous. The color photographs in the record show that the gate was "plainly observable and did not pose any danger to someone making reasonable use of his or her senses" (*Buccino v City of New York*, 84 AD3d 670, 670 [1st Dept 2011] [internal quotation marks omitted]; *see also Gallub v Popei's Clam Bar, Ltd., of Deer Park*, 98 AD3d 559 [2d Dept 2012]). The gate was not obscured by other people or objects, or by its location, and nothing about it or the fence created any optical confusion. Plaintiff had lived in the building since 2007, and the gate had been unlocked and in the same condition since 2006, if not longer. Plaintiff testified that he looked at the fence before he leaned against it and "assumed it was sturdy," and there is no evidence that he did not notice the gate because he was distracted. NYCHA's superintendent of groundskeepers stated that NYCHA had not received any other complaints about the fence, and no one else had ever been hurt by it. Furthermore, "there is nothing inherently dangerous about a gate that has no lock" (*Ortiz v New York City Hous. Auth.*, 85 AD3d 573, 574 [1st Dept 2011]).

In opposition, plaintiff failed to raise an issue of fact (*see Bloom v Lula Realty Corp.*, 43 AD3d 662, 662 [1st Dept 2007] ["plaintiff has failed to demonstrate that the absence of a knob or handle on the gate in any way constituted a defect, violated a statute, or was inherently dangerous"]). The dissent disagrees, finding an issue of fact whether the gate was a trap for the unwary, based on the affidavits of plaintiff's expert and an eyewitness stating that the fence and gate had the appearance of one continuous fence. However, the color photographs in the record show that the gate is not flush with the rest of the fence and that three hinges on the right side and a hasp on the left side of the gate, attached to posts that are thicker than the vertical bars in the fence, are clearly visible. Thus, the opinion of plaintiff's expert and the eyewitness are belied by the

photographs the expert took, which demonstrate that the condition was open and obvious and not inherently dangerous (*see Salman v L-Ray LLC*, 93 AD3d 568, 569 [1st Dept 2012] ["Defendants submitted evidence, including testimony and photographs, demonstrating that the condition of the steps was not inherently dangerous"]; *Broodie v Gibco Enters., Ltd.*, 67 AD3d 418, 418 [1st Dept 2009] ["several color photographs in the record depicted the step as not particularly high, and clearly painted in white and black so as to be visible even in the low light provided by the recessed ceiling bulb above"]; *Cardia v Willchester Holdings, LLC*, 35 AD3d 336, 336-337 [2d Dept 2006] ["Willchester made a prima facie showing of entitlement to judgment as a matter of law by presenting photographs depicting the condition of the parking lot at the time of the plaintiff's accident, which demonstrate that the wheel stop over which the plaintiff tripped and fell was not an inherently dangerous condition, and was readily observable by those employing the reasonable use of their senses"]). Concur—Tom, J.P., Andrias, Abdus-Salaam and Gische, JJ.

Saxe, J., dissents in a memorandum as follows: Since the majority has unnecessarily thrust itself into the role of factfinder, I must respectfully dissent from the dismissal of the complaint. Our role as gatekeeper should not undermine the right of litigants to have their cases—even ones about which we are skeptical—heard by a jury. Even if our experience tells us that a litigant is likely to face an uphill battle, the courtroom is the proper venue for the determination of the controversy.

Plaintiff testified that he leaned back against what he thought was part of the sturdy, three-foot-high black iron fence surrounding a grassy area. Only when the section of fence gave way and swung inward, causing him to fall and sustain injuries, did he discover that, in fact, the portion that he had leaned against was a gate that was not secured. The gate had been designed to be secured to the fence by means of a hasp—a metal plate with a hole in it—that would line up with a matching hasp on the adjacent fence post, so that a lock or pin could be threaded through the holes in the two hasps to hold them together. However, according to plaintiff's expert, the two hasps were out of alignment, and could not be secured with a padlock. Marks on the fence post indicate that instead the gate was held closed solely by friction. Thus, the gate had the appearance of lining up with the fence, but moderate pressure would cause it to give way.

As plaintiff's expert stated, and as some of the photographs in the record indicate, the fence and the gate are of uniform height,

color, design, and shape, and are indistinguishable at first glance, giving the appearance of one continuous fence. Further, as the expert pointed out, there in no indication in the sidewalk on one side, or the grass on the other side, such as a path or curb cut, that a gate is located in that section of the fence. Another eyewitness also asserted that the gated portion of the fence is not obvious, but looks like a continuous fence, without visible signs indicating the presence of an opening such as a gate.

In support of its summary judgment motion, defendant offered an affidavit by its supervisor of groundskeepers at the housing development, asserting that there are many such unlocked and unlatched gates in the fences, that "one does not have to look very closely to see that on one side, like all gates, it is hinged in three (3) places," and that "the spacing of the vertical bars on both sides of the gate clearly are very different, indicating that a gate is there." However, this is merely his opinion, and does not establish the facts he asserted as a matter of law. His position does not invalidate the opposing view by plaintiff's expert, with which an eyewitness to the accident agreed, that due to their uniform height, color, design, shape and location, the fence and the gate "are nearly indistinguishable at first glance, appearing to be one continuous fence." Despite the clear factual issue on this point, the majority relies on photographs in the record to make the finding urged by defendant, namely, that, as a matter of law, the presence of the gate is "clearly visible" and "open and obvious" and therefore "not inherently dangerous." In so doing, the majority is engaging in fact-finding, which is impermissible in the context of a summary judgment motion.

Defendant's other arguments, explaining why keeping the gate unlocked and unlatched is useful or necessary to the development's residents, cannot negate the possibility that an unlatched gate that is attached to the fence merely by friction and appears to be part of the fence, may constitute a hazard.

While "there is nothing inherently dangerous about a gate that has no lock" (*Ortiz v New York City Hous. Auth.*, 85 AD3d 573, 574 [1st Dept 2011]), this particular gate did not even latch, and an issue of fact exists whether a reasonable person would have discerned that it was in fact a gate, rather than merely a portion of an apparently sturdy iron fence able to bear the weight of a person leaning on it. As in *Ortiz*, where there was an issue of fact about the placement and use of the gate, the particular circumstances of the gate in this case create an issue whether the gate constituted a dangerous condition (*see id.*).

In addition, a "condition that is ordinarily apparent to a person making reasonable use of his senses . . . may be rendered a trap for the unwary," depending upon the circumstances, including whether "the condition is obscured . . . or the plaintiff's attention is otherwise distracted" (*Mauriello v Port Auth. of N.Y. & N.J.*, 8 AD3d 200, 200 [1st Dept 2004]). While plaintiff did not mention being distracted, he did assert that his belief at that moment was that he was leaning on a fence. This presents a question of fact whether the fact that it was a gate was obscured in any way.

Accordingly, in my view, the motion court correctly determined, upon review of the expert and eyewitness affidavits, deposition testimony and photographs of the site of the accident, that issues of fact existed whether the unlocked gate set in the iron fence was readily observable and whether it posed a danger to a person making reasonable use of his senses. In addition, a question exists whether the appearance of the fence and gate obscured the presence of the gate so as to make it a "trap for the unwary."